Good morning. My name is Robert Rexford. I represent Mr. Banalas. With the panel's permission, I'd like to begin with the Batson error that was raised by Mr. Banalas. I think it's the most straightforward error in this appeal. Unfortunately, it requires some factual clarification before the panel, and candidly, I think what to do about the error is perhaps the most interesting legal issue in the appeal. I want to make sure I filed very, very late yesterday a Rule 28 clarification letter, and I wanted to make sure the panel received it. I do have copies if anyone needs it. I think it's important, and I apologize for the lateness. I filed it as soon as I caught what I think an error that happened in the briefing. And I think I know where the error took place. When you go to the Batson challenge itself in the excerpt of record, both the government and the district court very confidently refer to the juror under discussion as Nicole B. The record, the only reasonable way to read this record, I think, is that the juror under discussion was not Nicole B. It was Susan Batson. What difference does it make, counsel? I just read Susan F.'s statement here, and I don't get it. I don't get what disqualified Susan F. Why she wasn't in the same category as Nicole B., that that is that she was not Hispanic, and there was no substantive reason to do this other than the fact that she was of her race. I disagree. I think defense counsel's explanation at trial that he had an intuition that Susan F., or juror number eight, might have a law enforcement bias is a... She has a master's degree in microbiology. I understand, sir. Her husband worked for JPL, and she watches news and science programs. Okay, now, where do you get the intuition? Well, I'm assuming that JPL, because of where this case was tried, would stand for Jet Propulsion Laboratory. Look, I think it's a fairer inference that Susan F., based on what was said during Vlaudier, that Susan F., I'm a trial attorney. I kick scientists, and I do that for a reason, and it's because with the... But the attorney offered an explanation that he thought she had a sort of a law and order attitude about her, okay? The district court saw this. The district judge saw this at the same time. It was all contemporaneous, and saw the pattern and said, I'm disapproving the practice. Okay. So perhaps there was something in intuition. There isn't anything on this record that we can see, and the district judge saw the same thing that the attorney saw. There's a couple things there that, with the court's permission, I'd like to sort of try to bring out. Counsel, as a background, your client disqualified eight whites or Asians. It's only when they get to number nine that people begin to say, well, look, wait a minute. I don't know that that's the case, and I don't think the record establishes that, and here is why. Well, you don't disagree that the eight were disqualified that were white or Asian. I don't disagree, but I don't agree either. I'm completely agnostic, because I can't tell from this record, and here's why. When the government made its Batson challenge, one of the first things it said at sidebar is, look, judge, he's systematically kicking whites and Asians off of the jury. And I have to take some issue with the government statement in their answering brief that defense counsel at trial acknowledged that was the case. That's not what the defense counsel did. What the defense counsel said, and I apologize, it's later. What the defense counsel said, and this is an excerpt of record 262. When confronted with that accusation, the defense counsel says, he says, I've been excusing whites and Asians. That's not an acknowledgment that that's a true statement. That's just sort of restating the accusation. And then the defense counsel at trial thinks that, I think he believes he has to justify all his strikes, and that's why he starts talking about random jurors that he struck. So I'm not saying to this Court that he did not strike eight straight whites or Asians. I don't know. I just know that this record doesn't, doesn't establish that he did. And more important. But there's nothing to establish that he didn't. That is true. Okay. Let's move on. Okay. On that, on that point, there's also, in terms of making a prima facie case under Batson,  I just don't, I don't know, no one knows. I mean, to make up a prima facie case that you're only striking a certain ethnicity or maybe two ethnicities, that only makes sense if you know what the large, the ethnicity of the larger pool is. And we have to reverse this because we don't know that information, even though we had a trial judge sitting there watching the whole thing unfold. Yes. So you have a judge who's seen all the people who have come in and makes a contemporaneous ruling. But we have to reverse it because we don't have full development of the record. We don't have the backgrounds of everybody whose name was in the pool. I'm not saying you need the backgrounds of everyone. You need some facts. You need some indication that the district court properly applied Batson. And on this record, there's no indication that the district court did so. And I do, I think factually, the contemporaneous ruling that the district court made was in reference to a factual summary by the government regarding a juror who wasn't under consideration. Because it's not as if the district court made, when the district court ruled, it's not as though the district court said, you know, I find that there has been systemic discrimination, or I find that your reason for kicking juror number 8 is pretextual. He just says, I grant the government's motion. The only motion of the government was to not allow the peremptory challenge against juror number 8. And if the district court, which seems very likely on this record, if the district court said, hey, why did you kick juror number 8? And the defense attorney says, I got a feeling for law enforcement bias. And this goes back to what your question earlier. Scientists, jet propulsion laboratory, as a defense attorney, that says law enforcement to me. It may not be, but that's the whole point of peremptory challenges. That's the whole point of it. You can't put your finger on it. You get intuitions and you get guesses, and you can act on those as long as you're not purposely discriminating. The district court, he didn't say any of that. All he said was, hey, I'm granting the government's motion. Counsel, stop playing games. And if counsel stop playing games is the same as a finding that a defense attorney engaged in systemic racial discrimination at trial, no, sir. I don't think that's enough. This is a delicate area of the law. It is for when the government makes an objection based on this, and it certainly is for a defense attorney. You don't make it lightly, and you discuss it. There's no give and take between the defense attorney at trial and the district court. The give and take is this. I thought she might have a law enforcement bias. The government attorney, here is what Nicole B. said. That's a mistake. Immediately, the district judge granted. I just don't, there's no. I think we've got your point. Thank you. Wonderful. As for the remedy for the Batson violation, I may as well say I disagree with the two-member majority of Lindsay, but there it is. I tend to agree with Judge Pragerson that it was an imperfect vehicle to overturn an en banc decision, but that's the case that we're in here. But no matter what happened in Lindsay, there's a line of reasoning in the en banc case, Anagoni, A-N-N-I-G-O-N-I, that I think warrants reversal in this case. Because even if we accept that Lindsay appropriately overturned the en banc ruling that this is a per se reversible situation, Lindsay never answers the question as to what level of review applies in terms of harmlessness. Because recall that Lindsay is a plain error case, and that's the level of review that they applied. The defense attorney in Lindsay, it was a different factual situation, but nonetheless, there was no objection made by the defense attorney in Lindsay. So we're not on plain error review here. The defense attorney certainly didn't agree that he had violated Batson. So if there is a Batson error, this panel has to decide what level of harmlessness review is appropriate in this case following Lindsay's overturning of the en banc court. And the reasoning in the en banc court, I think, militates towards this panel reversing. And here's why. In Anagoni, in footnote 9, they note what the standard of review would be if it wasn't per se reversible. And it's the standard, Brecht standard of review, fair assurance that the judgment was not substantially swayed by the error. And then they go on to note that, and this is at page 144 to 45, it would be virtually impossible to determine whether the denial of a peremptory challenge was harmless enough to warrant affirming the conviction. It would be difficult, if not impossible, for a reviewing court to determine the degree of harm resulting from erroneously allowing a juror to sit despite a peremptory challenge, end quote. And then it goes on to say, and this is what I think is most important, quote, the government would be hard-pressed to bear its burden of proving that the seating of a peremptorily challenged juror did not harm the defendant, end quote. If we're not on plain error, and we're not, and this is not per se reversible because of Lindsay, it's not a constitutional error. It is the harmlessness that Anagoni was talking about. Well, whatever it is, wasn't there overwhelming evidence of guilt in this case? No. I'll say no. I mean, if we were to find that, would we, even if we found that's an error, wouldn't we still affirm? No. And here's why. I disagree with the premise, but that's all right. I don't think there was overwhelming. I think there's other error that the Court should consider cumulatively. But in terms of that, it's not just a – it's not a simple sufficiency of the evidence review. It's – or, you know, is there a lot of evidence that could have convict? You just can't unwind an improper denial of a peremptory. And that's what the en banc court is saying. That's what makes it so difficult. I mean, I guess the government could argue – The question to you was, wasn't there overwhelming evidence? So I think you should turn to the evidence in this case and tell us why it wasn't overwhelming. It wasn't overwhelming precisely because the vast majority of the evidence, as I recall, came through two cooperating witnesses that the government had, two people that were involved in this apparent fraudulent scheme. Aside from the – what's raised in the briefs, the denial of cross-examination on certain areas with those two witnesses, cooperating witnesses have an inherent – an inherent flaw to them. And I don't think that we should presume that a jury doesn't see that inherent flaw. Whether or not a defense attorney does a good job of going into, you know, why they have an interest in pleasing the government, I think there's an inherent feeling. And if the government's – the vast majority of the government's evidence as to the actual charges, not all the collateral stuff that was put into this trial, comes from two corroborating witnesses, I don't think that's overwhelming. The only other strong evidence as to the charges, not whether he violated, you know, city ordinance codes or anything like that, are the statements that were introduced by the government of Mr. Banalas itself. And that sort of bleeds into the 106 issue. Do I have six minutes remaining, or am I six minutes over? You do, but I have to be honest with you. I think that you don't really need the six minutes, and, you know, Okay. Look, I will candidly say that it would be helpful for this court if defense counsel at trial had introduced a transcript of the entire interrogation. It wasn't done. All right? I'm not sure if Mr. Banalas should be left holding the bag for that, and here's why. To a certain extent, the government invited it, and I would point the court to excerpt of record 1,000, actually. In the motion in Lemonade, the government is telling the district court, they go through this conversation about an e-mail that they've had, and the government in this e-mail, which they reference in their motions in Lemonade, tells it to the court, hey, I heard back from the defense attorney, and she wants to put in the whole thing. And I e-mailed her back asking for legal authority, and I never heard back from her. So they never asked for, hey, what are the parts that you think really need to be introduced to put these statements into context? They never asked for meet or confer. They asked for just simple legal authority. The legal authority is 106 itself. Look, this issue comes up a lot, and it's kind of a mess, to be perfectly honest. The government relies heavily on Collicott and Ortega. Neither case applies to this situation, and here's why I think that is the case, is neither Collicott or Ortega had anything to do with a writing or recording, and that's Collicott at 981 and Ortega at 682. So just, and they mention this, just by the facts of those two cases, because 106 is inapplicable, because 106 only applies to a memorialization of a statement, not an oral statement. And neither actually said that the admitted portions were somehow confusing or mischaracterized the entirety of the statement, and that can be found at Collicott at 982 and Ortega at 683. And, look, district courts go both ways on this issue, whether 106 can be used to put in statements when those statements are necessary to make sure the jury is not being misled. Obviously here, in this case, at excerpt of record 951 to 953, this district court said, 40 years I've been doing this, not the law, you can't do it. All you have to do is keysight Ortega. There's published district court cases going the other way. I think it's very unclear under this Court's precedent. You know, it is a question of fairness. The admissions that they're called, look, defense counsel tried very hard to get in other portions of the statement. I can't tell you what those portions are, and I'm sorry for that, but I just don't have a record of that. I've got to assume he wouldn't do it unless he had a good faith reason. At a minimum, perhaps this might, perhaps this is a case that should be remanded back to the district court for factual findings on that. Because if you look at the snippets, they're really bad. I mean, they're really bad. And if there is, if there is evidence, if there is, if there are statements surrounding those apparent admissions that show that they aren't the admissions that they are, then what a travesty that just because this district court thought the law forbade him from putting those statements in, that the jury was left with a misimpression. Any other questions? I'm going to save a couple if I could. All right. Thank you, counsel. Thank you. Good morning, Your Honors, and may it please the Court. Edward Elan from the United States. The government concluded at the time that I read the appellant's opening brief and when it prepared and filed the government's answering brief, and after it read the reply brief, that the Batson litigation related to Nicole B. After receiving defense counsel's call yesterday after 3 p.m. and reading the 28J letter after that, it seems logical that defense counsel had steered the parties in the wrong direction and that, in fact, the record shows that the challenge itself was instead to Susan B. Defendant has clearly raised a new claim. Is it Susan F. or Nicole B.? It's Susan F. Okay. Susan F. Defendant has clearly raised a new claim. What difference does it make, counsel? I mean, you can look at the statement that Susan F. made, and let's assume for the sake of argument here that counsel and everybody else got it mixed up. It looks like the district court might have got it mixed up. Let's suppose that the juror really at issue here is juror number 8, Susan F. What difference does it make? Well, here's the difference. The Batson analysis as a legal matter is probably the same, but there's new legal issues that arise. First, the late notice and failure to raise this issue in the opening brief should be. I'm asking you to go to the merits, counsel. I understand the disadvantage the government's been put to here by having briefed Nicole B. when we were really talking about Susan F. I'm asking you to look at the discussion of Susan F., which is only about a half a dozen lines, and tell me what the problem is. As to the merits of Susan F. Right. Susan F. and her family members had no connection to the government and never worked in law enforcement, and that's excerpts of record 226 and 253. It looks pretty obvious that there wasn't anything there other than what counsel says, which was intuition on the part of defense counsel. Now, I don't know what we do with that at this point, but even if counsel thought he had intuition, did the district court, was the district court out of line, having seen the witness, to have disagreed and said, well, this is either the eighth or ninth in a row that you've dismissed? Then I don't believe your explanation. The answer is yes. Well, did the district court make a finding of purposeful discrimination as it's required to do? He did. He said you're playing games. That's not a finding of purposeful discrimination. You're playing games. Playing games isn't a finding that's required by Batson. Well, in this context. I mean, in Judge Reel's world, you're playing games as a finding of purposeful discrimination. Judge, I mean, a judge should say, I reject that. I believe that, you know, having gone through the three bets and steps, you may have made a prima facie case, and he's saying, well, this is my intuition. Science equates to law enforcement. And the judge may find that's pretext, but did he find that it was purposeful discrimination, and did he say either one of those things? The governor would say that he did by saying you're playing games. Do you really think that's legally sufficient under Batson? Under these circumstances, yes. What circumstances relieve a district court of its obligation to do what the Supreme Court has directed it to do in Batson? I would say none to that, but the issue is, under the circumstances, was it clear that he was making that finding? And here, as opposed to under the context of the way that this happened, with waiting until he struck eight jurors in a row, and this was the ninth juror, it seemed pretty clear that the judge was making that finding. Now, it was a terse finding, but at least it was a finding as to, you know, the discriminatory intent. And I'd just like to point that in Rivera, the trial judge raised to a sponte and upheld the Batson challenge, and the Supreme Courts of the United States and Illinois found that the judge had utterly failed to state the basis for his finding at Batson Step 1. In fact, the Illinois Supreme Court found that the record fails to support a prima facie case of discrimination of any kind, and yet the Supreme Court unanimously held that because there was no indication the jurors were unqualified or challengeable for cause, automatic reversal was not appropriate and harmless error should apply. So even if this Court were to view the record as not being sufficient, that still would not be enough to overturn. Well, what is the standard that we're supposed to apply? The standard depends on whether this is a new claim or whether this is – as to what we briefed in our answering brief, we said that it would be harmless error. But to the extent that he's raising a new juror, we would argue that that was waived below, waived here, and it would be plain error. Well, all right. This is pretty confusing because the transcript I have as to Nicole B. talks about – is followed by the statement about his intuition that she had something to do with law enforcement. But the transcript I have as to Susan F., he doesn't make that – he doesn't make that – who are you referring to by – After Susan F. gives her – where is she? She describes – Nicole B. is the one who's had a jury in Mesa, Arizona. And let's see from that. I wish this were highlighted or something so I could find it. According to the page. Excerpt of records 256, 257. Thank you. So, okay. So, 256. Where is Susan F.? I see 257. Nicole B., are you saying that the name should be Susan F. and not Nicole B. with the same testimony? No, no. This is Nicole B. This is what Nicole B. said. Okay. That's what Nicole B. said. What Susan F. said is on 253. Okay. Well, the Batson objection is on excerpts of record 261. And I'd just like to say that the Batson objection was after eight jurors were already stricken that were white or Asian. Perhaps you could read for us from page 261. The government requests that the Court not honor this preemptory challenge on the ground that the defendant is prohibited from exercising preemptory challenges based on a purposeful racial discrimination under Georgia v. McCollum, 505 U.S. 42. The last jurors, prospective jurors stricken by this defendant, have all been white and or Asian, and he's systematically placing Asians on the panel, systematically placing Hispanics on the panel. And the defense attorney says, do you want a response, Your Honor? The Court says yes. Okay. So with respect, his explanation with Nicole B. was intuition, strong law and order. Right? Correct. And the record does not support that at all. Nicole B. and her family members had no connection to the government and had never worked in law enforcement. That's excerpts of record 226 and 256. Have you ever been to Mesa, Arizona? I have not. I have. And she served on a jury as a criminal case, and they reached a verdict in Mesa, Arizona. If I had been the trial judge, I would have found some basis for the intuition that that was somehow related to law enforcement. Safford, Arizona is very near there, and I happen to know there's a federal penitentiary there. So I'm just saying it isn't totally out of line to have made that comment, if you know anything about Mesa, Arizona. But he didn't mention anything about her jury duty. He mentioned the fact that she's watching cop shows, and she doesn't watch any cop shows. She watches comedies and game shows or reality shows like Survivor and Modern Family. So it was very clear under the circumstances that that's exactly what was happening. And the government didn't raise this reverse Batson challenge after the first, second, third, fourth, or fifth time. We waited until it was definite, and there was no way around it. I don't know. So did we review this for harmless error? I don't see it as a new claim. I think it's the same claim, because the explanation went to Nicole F. So do we review this under harmless error review? And if so, why is this error not harmless? Why is it not harmless? Well, first of all, there's no prejudice whatsoever. This jury was out at most two or three hours. The evidence was overwhelming. It wouldn't have mattered who was on the jury. It was just so overwhelming. It wasn't ñ and there was no indication that there was anything improper happening on the jury, and there was no indication that the judge did anything intentional.   There's no prejudice. Evidence of defendant's participation, knowledge, and intent came not only from the cooperating co-schemers, but it came from the fraudulent documents bearing defendant's signatures and defendant's own recorded statements. The evidence also included not just the co-schemers, but also the co-schemers evidence, but it also included testimony from two bank underwriters who each called defendant's phone number, and defendant falsely confirmed, he answered the phone and said, Juan's Computer Services, which was a completely false business. Evidence also came in that defendant and that same phone number, using that same phone number on a truck financing application, and that's Government Exhibits of Record 95. And that was on March 29, 2007. These properties closed in February 2007. So this is a month after. And he filled out himself, without the help of his co-defendants, an application for financing that also contains similar false statements about his income and employment. For example, defendant conceded in his opening brief on page 17 that on this application the defendant indicated that he worked as a realtor at Century 21 Premier Realty for 2 years and 3 months and stated that his income was $10,000 a month and also listed his rental income of $8,300 a month. In reality, defendant was not a realtor. He was an assistant to a realtor at all. So he wasn't a realtor at all, let alone for 2 years and 3 months. In addition, defendant was not making $10,000 a month. And for that, you could see Exhibits of Record 898, where a defendant was asked, you were making over $10,000 a month? And he said, no, like one month I made that. The evidence was overwhelming in this case. It wasn't just co-defendant testimony. It wasn't just recorded statements. It wasn't just applications for financing with his signature on them. It wasn't just, it wasn't just bank reps confirming that this defendant confirmed the lie, you know, wants computer service, and that same number that was called was used by the defendant independently in getting utilities or even in his, in his there's also a record in the government's Exhibits of Record which was a bank opening account opening with his mom, where his mom was on the account and he was a beneficiary. But in order to make this scheme work, he had to be actually on the account. So right around the time when this is going on, the defendant all of a sudden becomes on the account as an actual account holder. And it's the same phone number. So the evidence was overwhelming, and there's also inconsistencies in his statements to law enforcement officers, to a small, small claim court, to, I mean, he said he lived in a place, he said he never lived in a place. It was overwhelming. Well, he couldn't have intended to occupy all six houses at the same time. He couldn't have intended to occupy. Well, that's, that's, I would agree with that. He could not have intended to occupy all six houses at one time. But in one of his admissions, he made a comment that I didn't know which house I was going to occupy. It was overwhelming here. And the jurors got it. It was not a tough case. It was a simple case. All right, counsel. We get it, too. Thank you. Thank you. You have a couple minutes. Thank you. I think the answer to your question, I think the parties agree that the court refused the district court's decision regarding Batson under a clearly erroneous standard. Case law is pretty standard on that. Why it makes a difference, whether it was Nicole B. or Susan F., because if the district court is sustaining a Batson challenge based on facts regarding to a juror other than the juror that's being challenged, how can you say that's anything but clearly erroneous? He's basing his decision on facts that aren't applicable. I think you're absolutely right to focus on the Batson issue. It's your strongest issue. So thank you very much, counsel. United States v. Banalas-Venegas is submitted. And this session is closed and adjourned for today.
judges: Fletcher, Wardlaw, Bybee